**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Schaeffler Business Information LLC, | No. CV-21-00740-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Live Oak Banking Company, *et al.*, | |
| Defendants. | |

At issue is Defendants' Motion for Dismissal, or in the Alternative, to Stay and Compel Arbitration (Doc. 21, Mot.), to which Plaintiff filed a Response (Doc. 22, Resp.), Defendants filed a Reply (Doc. 25, Reply). The parties also filed supplemental briefs at the request of the Court (Docs. 42, 43). The Court resolves the pending Motion without oral argument. *See* LRCiv 7.2(f).

**I.    BACKGROUND**

The parties do not materially dispute the following allegations. Defendants Live Oak Banking Company, Live Oak Bancshares, Inc., and Live Oak Clean Energy Financing LLC are engaged in virtual banking and provide government-guaranteed loans to small businesses. Plaintiff Schaeffler Business Information, LLC, dba The Carmel Group, is a telecommunications, computer, and media industry consultant. In 2018, Defendants approached Plaintiff for help developing business in the broadband industry, and they entered into two preliminary agreements to test the relationship: a Nondisclosure Agreement ("NDA") on June 20, 2018, and a Letter Agreement on July 17, 2018. When

the relationship appeared fruitful, the parties entered into two long-term agreements: an Independent Contractor Service Agreement ("ICSA") on September 18, 2018, and a Referral Agreement ("RA") on September 24, 2018, both containing Arbitration Agreements. But the parties' relationship deteriorated quickly, and Defendants terminated the RA on October 30, 2018, and the ICSA on March 30, 2019.

Plaintiff filed this action on April 27, 2021, raising eight claims against Defendants, including the following: (Count 1) declaratory relief that the Arbitration Agreements in the ICSA and RA are unenforceable under the doctrines of fraud in the inducement and/or the effective vindication exception; (Counts 2 and 3) trade secrets violations; (Count 4) fraud in the inducement; (Count 5) breach of the Letter Agreement; (Count 6) breach of the NDA; (Count 7) breach of the covenant of good faith and fair dealing in the NDA; and (Count 8) unjust enrichment/quantum meruit. (Doc. 1, Compl.) Because it is dispositive, the Court now focuses on Defendant's motion to compel arbitration under the parties' Arbitration Agreements.

## II.   LEGAL STANDARD

To resolve a motion to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, a district court must resolve two gateway issues: (1) whether the parties entered into a valid agreement to arbitrate, and (2) whether the arbitration agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). Where the arbitration agreement is a part of a more extensive contract between the parties, "the sole question is whether the arbitration clause at issue is valid and enforceable under § 2 of the [FAA]," and "federal courts may not address the validity or enforceability of the contract as a whole." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir. 2001). The FAA "mandates that federal courts rigorously enforce agreements to arbitrate." *Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 940 (D. Ariz. 2011) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to arbitration

on issues as to which an arbitration agreement has been signed." *Id.* (internal quotation and citations omitted). "In construing the terms of an arbitration agreement, the district court applies general state-law principles of contract interpretation, while giving due regard to federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Id.* (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)).

**III.   ANALYSIS**

The Arbitration Agreement in the ICSA provides:

> The Parties shall attempt in good faith to settle any dispute or controversy arising under, out of, or in connection with or in relation to this Agreement, or any amendment hereof, or the breach hereof, by negotiation and mutual agreement; provided that if the Parties are not able to agree within a reasonable period of time, then any such dispute or disagreement shall be resolved by submitting such dispute first to mediation and second to binding arbitration in Colorado. . . . If the dispute or disagreement is not settled by mediation within a reasonable period of time, then either Party may demand arbitration, in which case the dispute or disagreement shall be arbitrated in accordance with rules and procedures established by the American Arbitration Association's Commercial Arbitration Rules . . . . Any award rendered by the arbitrator shall be final and binding upon each of the Parties.

(Doc. 1-2 at 20-21.) The Arbitration Agreement in the RA provides:

> Any dispute or claim arising out of, or in connection with, this Agreement will be finally settled by binding arbitration in Denver, Colorado, in accordance with applicable state statutes (the "Uniform Arbitration Act") and then-current rules and procedures of the American Arbitration Association by one (1) arbitrator appointed by the American Arbitration Association. The arbitrator will apply the law of the State of Colorado. . . . Judgment on the award rendered by the arbitrator may be confirmed, reduced to judgment and entered in any court of competent jurisdiction.

(Doc. 1-2 at 28.)

The parties do not dispute that they entered into an agreement to arbitrate disputes under the ICSA and RA or that the subject matter of Plaintiff's claims—to the extent they pertain to the ICSA and RA—are encompassed by the Arbitration Agreements. Instead,

Plaintiff raises three arguments against enforcement of the arbitration provisions to its claims: (1) because Plaintiff couches a number of its claims as arising out of the NDA and Letter Agreement, which did not contain their own arbitration provisions, the arbitration provisions of the ICSA and RA do not apply to those claims; (2) Plaintiff was fraudulently induced to enter into the agreements; and (3) the Arbitration Agreements are unenforceable under the effective vindication exception. The Court examines these in turn.

### A. Integration Provision

Defendants first argue that, to the extent Plaintiff brings claims under the NDA and Letter Agreement, those agreements were integrated into the later, superseding agreements, the ICSA and RA, and the Arbitration Agreements in the ICSA and RA thus apply to all of Plaintiff's claims (so far as they are well-pled). In support, Defendants point to the integration provision in the ICSA that it "constitutes the entire agreement between [Defendants] and [Plaintiff] . . . and supersedes any and all agreements, either oral or in writing" between the parties. (Doc. 1-2 at 20.) The RA states that it "contains the entire agreement between the parties, written and oral, and supersedes all other agreements and understanding between the parties." (Doc. 1-2 at 25, 28.)

The parties agree that Colorado law applies to the question of whether a new agreement supersedes a prior agreement by way of an integration provision. (Docs. 42, 43.) "Under Colorado law, a contract of novation has four prerequisites: (1) a previous valid obligation, (2) an agreement between the parties to abide by the new contract, (3) a valid new contract, and (4) the extinguishment of the old obligation by the substitution of the new one." *Mayotte v. U.S. Bank Nat'l Ass'n*, 424 F. Supp. 3d 1077, 1093 (D. Colo. 2019) (citing *Moffat Cnty. State Bank v. Told*, 800 F.2d 1320, 1323 (Colo. 1990)); *see also Associated Nat. Gas, Inc. v. Nordic Petroleums, Inc.*, 807 P.2d 1195, 1195 (Colo App. Ct. 1990) (noting the instrument in question "included an integration clause that rendered 'null and void' all prior agreements between the same parties relating to the same subject matter").

Counts 1, 4, and 8 of the Complaint arise from the ICSA and/or RA, so integration is immaterial to those claims. With respect to the balance of Plaintiff's claims, the Court agrees with Defendants that the terms of the ICSA and RA supersede the NDA and Letter Agreement with respect to most of those claims. The language of the ICSA and RA makes clear that they were agreements between the same parties who intended that the new agreements extinguish the old agreements to the extent the agreements contemplated the same subject matter. Thus, as far as Plaintiff brings claims for breaches of confidentiality or trade secrets (Counts 2, 3, 6, 7), those claims must arise under the superseding agreements, the ICSA and RA, which address the same subject matter by way of their own detailed confidentiality provisions. (Doc. 1-2 at 16-18; 27-28.) But Plaintiff's claim for payment of $750 under the Letter Agreement (Count 5) was not an obligation superseded by the new agreements, so that claim is not subject to the Arbitration Agreements of the ICSA and RA.

### B. Fraud in the Inducement

Plaintiff seeks a declaration from the Court that the Arbitration Agreements are unenforceable because they were the result of fraud (Count 1), and Plaintiff also raises a separate claim of fraud in the inducement (Count 4). The Court agrees with Defendants that Plaintiff's allegations only address whether Plaintiff was fraudulently induced to enter the agreements as a whole, and not the Arbitration Agreements specifically, and under federal law, this is a question for the arbitrators. In *Prima Paint Corporation*, the Supreme Court addressed "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967). The Court concluded, "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language [of the FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id.* at 403-404; *see also Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 445-46 (2006).

Although Plaintiff tries to characterize its allegations as creating a plausible inference that it was fraudulently induced to enter into Arbitration Agreements specifically (Resp. at 10-11), the allegations go only to the parties' business relationship generally. As a matter of law under the FAA, whether fraud renders the ICSA and RA unenforceable is a question for the arbitrators, and the Court cannot find the Arbitration Agreements unenforceable for that reason.

### C. Effective Vindication Exception

Plaintiff argues that, on account of a fee splitting arrangement in the Agreements, the cost to it of arbitration could be so high as to make access to arbitration impracticable. The effective vindication exception provides that an arbitration agreement may be unenforceable as substantively unconscionable if it constructively eliminates a "right to pursue" federal statutory remedies because it results in filing and administrative fees "that are so high as to make access to [arbitration] impracticable." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013). Plaintiff does not adequately support its argument. Plaintiff may fully pursue its statutory rights in arbitration, and it proffers no reasonably certain evidence showing how the costs of arbitration are substantially greater than the cost of this litigation, let alone as applied to Plaintiff specifically and Plaintiff's ability to pay. Under the Agreements, if Plaintiff prevails, it can recover its fees and costs. In short, Plaintiff does not make the requisite showing of the oppressive nature of the arbitration process provided for in the Arbitration Agreements such that the Court will find those Agreements unenforceable.

### D. Stay

Under § 3 of the FAA, "the Court is required to stay proceedings pending arbitration if the Court determines that the issues involved are referable to arbitration under a written arbitration agreement." *Meritage Homes Corp. v. Hancock*, 522 F. Supp. 2d 1203, 1211 (D. Ariz. 2007); *see also AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (stating the FAA requires courts to stay litigation of claims subject to arbitration pending the outcome of the arbitration of those claims under the terms of the arbitration agreement).

To the extent Plaintiff's claims are properly pled as arising out of the superseding agreements (the ICSA and RA), seven of eight claims are subject to arbitration under the Arbitration Agreements in the ICSA and RA. Only Count 5, seeking a payment of $750 under the Letter Agreement, is not. Because the great bulk of Plaintiff's claims in this action are subject to arbitration, the Court will order the parties to arbitration under the Agreements and, in its discretion, stay Count 5 pending the results of the arbitration.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendants' Motion for Dismissal, or in the Alternative, to Stay and Compel Arbitration (Doc. 21).

**IT IS FURTHER ORDERED** that no exception to enforcement of the Arbitration Agreements in the Independent Contractor Service Agreement and Referral Agreement applies, and, in the absence of resolution in mediation, the parties are compelled to arbitrate Plaintiff's claims, with the exception of Count 5, under the terms of the Arbitration Agreements as soon as is practicable.[1]

**IT IS FURTHER ORDERED** that the parties shall file a joint status report eight months from the date of this Order or within one week of an arbitration award, whichever is sooner.

**IT IS FURTHER ORDERED** staying Count 5 and further proceedings in this action pending the results of the parties' arbitration.

Dated this 1st day of March, 2022.

Honorable John J. Tuchi
United States District Judge

---

[1] Under the Agreements, mediation is a condition precedent to arbitration.